BARRETT *vs.* WALKER.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE
BUCHANAN PRESIDING.

According to a statute law of Mississippi, all notes made there are subject to every equitable defence against a *bona fide* endorsee, which could be set up against the payee; and when sued on here, the case must be governed by the *lex loci contractus*.

When a vendee has not complied with his agreement, he cannot complain, and set up as a matter of defence to his note, that the vendor has not extinguished a certain mortgage, when this failure was the consequence of his not complying with his stipulation to pay in a certain manner.

This is an action on three promissory notes, signed by the defendant at Natchez, in Mississippi, the 26th January, 1831, for one thousand dollars each, and payable in all the month of November, 1834. These notes were given in part payment of the price of two tracts of land and slaves, in the parish of Lafourche Interior, purchased of the Bowies by R. J. and D. S. Walker, and James C. Wilkins, for the sum of ninety thousand dollars, as evidenced by two notarial acts of the 12th February, 1831, and an act *sous seing privé,* dated at Natchez, the 7th March, 1831. The latter act fixed and specified the modes and times of payment, according to the real meaning and understanding of the parties.

The defendant pleaded a general denial; admitted his signature, and averred, that there was a failure of consideration; said notes only were to be paid under certain conditions which have not been complied with. A long settlement of accounts were set up in the defence which are stated in the opinion of the court.

The district judge, after going into an elaborate settlement of the accounts between the parties, decided that the defendant was liable to pay his notes. That any failure of the conditions was imputable to him, in not paying off the liens and mortgages. Judgment was rendered for the amount of the notes sued on, and the defendant appealed.

EASTERN DIST.
*January*, 1840.

BARRETT
*vs.*
WALKER.

*Sterrett*, for the plaintiff.

*L. Janin* and *Johnson*, for the defendant.

*Morphy, J.*, delivered the opinion of the court.

The defendant and appellant is sued by an endorsee on three promissory notes, drawn by him at Natchez, to the order of one James Bowie, and payable at the State Bank of Mississippi, in all November, 1834.

The notes sued on were given in part payment of the price of land and slaves, sold by James Bowie and others, to defendant, D. S. Walker, and J. C. Wilkins. The sale was made by notarial act, in the parish of Lafourche, on the 12th of February, 1831, and purports to be for cash; but in an act under private signature, executed at Natchez, on the 7th of March following, the parties declare that the purchase money had not been paid, as acknowledged in the sale; that its amount, to wit, ninety-four thousand four hundred and seventy-five dollars, was payable in six annual instalments, the last to fall due in all November, 1836. This instrument describes certain liens and mortgages on the property sold, amounting to thirty-seven thousand nine hundred and seventy-seven dollars and sixty cents, which were to be paid with and out of the price, as the instalments would become due. It provides, among other things, that, should the purchasers have to make any advances on account of the liens and mortgages therein set forth, before the stipulated periods of payment, they are to be allowed ten per cent. per annum on such advances; and that, before the last instalment is paid, all liens and mortgages, of every description, are to be removed, and the title rendered secure, before signing this private act. The purchasers, moreover, agreed to give five notes of one thousand dollars each, out of a sum of seven thousand seven hundred and eighty-one dollars and ninety cents, which it had first been agreed should remain in their hands; said five notes to be subject to the conditions of the final payment, in 1836, as to the removal of all mortgages, and the security of the title. It is on three of these five notes that the present suit is brought.

A statute of the state of Mississippi, is spread on the record as evidence, and shows that the maker of a note, in that state, may set up any equitable defence against a *bona fide* endorser, which he could offer against the payee. The notes in suit being made in Mississippi, must be subject here to all the rules and limitations prescribed by the *lex loci contractus celebrati*. We are, therefore, bound to examine the defence set up by the maker, as if this suit had been brought by the payee himself; but at the same time we cannot but think that plaintiff, being a perfect stranger to all the transactions between these parties, is entitled to strict proof of all the facts connected with, or growing out of them.

According to a statute law of Mississippi, all notes made there are subject to every equitable defence against a *bona fide* endorsee, which could be set up against the payee; and when sued on here, the case must be governed by the *lex loci contractus*.

Among other means of defence set forth in the answer, but not insisted on at the trial, the defendant contends that, on the 12th of December, 1835, when this suit was brought, there existed, on the property sold to him, mortgages to the amount of thirty-two thousand five hundred and fifty-one dollars and thirty-six cents; that by express stipulation he was not to be required to pay these notes until three mortgages were raised; of this amount of mortgages complained of as unextinguished, only one thousand six hundred and ninety dollars and eighty-seven cents are mortgages described in the *sous seing privé* act; the balance being the amount of four judicial mortgages set forth in the parish judge's certificate annexed to the sale.

From the private act of the 7th of March, 1831, the purchasers appear to have paid, in cash, twenty-five thousand five hundred and seventy-seven dollars, and to have given their notes for twenty-seven thousand nine hundred and seventy-one dollars and fifteen cents, leaving the balance to be paid by the extinguishment of the mortgages therein mentioned, and amounting to a sum about equal to said balance. The record furnishes no proof that any of these notes have been paid; not being negotiable, they are liable to all the equities which the vendees may be entitled to. If any of them have been paid, it was incumbent on defendant to show such payments. A close examination of the voluminous documentary evidence adduced, has not enabled us

Eastern Dist.
January, 1840.

BARRETT
vs.
WALKER.

to find that, at the institution of this suit, the purchasers had paid more than seventeen thousand nine hundred and sixty-six dollars and seventy-seven cents, towards the extinguishment of the mortgages set forth in the private act; that sum being added to the cash payment above mentioned makes an amount of forty-three thousand four hundred and thirty-three dollars and ninety-seven cents, while they should then have paid, under their contract, the sum of seventy-nine thousand four hundred and seventy-five dollars, all the instalments having matured, except that of 1836. The vendees, therefore, at the inception of this suit, stood largely indebted on their contract, even after allowing the ten per cent. interest on such advances as they had made on the two or three first instalments. Having thus failed to comply with their own obligations, the purchasers cannot, with any good grace, complain of a failure on the part of their vendors, when that failure was a consequence of theirs. It had been covenanted that the mortgages described in the *sous seing privé* act were to be paid out of that part of the price for which no notes had been given; the vendees, therefore, had in their hands abundant means to extinguish the remaining one thousand six hundred and ninety dollars and eighty-seven cents of these mortgages, and pay all their outstanding notes, if yet unpaid at that time.

When a vendee has not complied with his agreement, he cannot complain, and set up as a matter of defence to his note, that the vendor has not extinguished a certain mortgage, when this failure was the consequence of his not complying with his stipulation to pay in a certain manner.

As to the thirty thousand eight hundred and sixty dollars and forty-nine cents, being the amount of the four judicial mortgages, which defendant contends must also be removed before he can be required to pay the notes sued on, we confess that the notarial sale, taken in connection with the private act, does by no means exhibit, in a very clear light, the real understanding and intentions of the parties. From the best consideration we have been able to give them, we have come to the conclusion that these four judgments were not contemplated in the stipulation providing for the removal of all mortgages previous to the final payment.

In the notarial act we find the following clause: "By a certificate of the said parish judge, dated the 11th of this present month, it appears that the premises and slaves pre-

sently sold, are affected with a number of mortgages, which are to be paid with and out of the consideration of the present sale, except the four judicial mortgages in favor of Robert Thompson, Girod & Brothers, the widow 'and heirs of Ives Le Blanc, and James and Jean Candelle, amounting to thirty thousand eight hundred and sixty dollars and forty-nine cents, the validity of which judicial mortgages the parties do in no wise acknowledge. The said amount of judicial mortgages is not to be retained by the purchasers on the consideration of this sale, they being, as to said judicial mortgages, satisfied with the warranty here above stipulated, holding the vendors responsible, personally, for all the consequences of the said judicial mortgages."

It is evident to us, that the *sous seing privé* act was intended to carry into effect this clause of the authentic act. It was to regulate the times and modes of payment, and to describe the particular mortgages to be extinguished with and out of the price; besides these, there are many other legal and conventional mortgages mentioned in the parish judge's certificate, for the removal of which it was necessary to provide before the final payment of the purchase money. From the above recited clause in the notarial act, it appears that the parties, not acknowledging the validity of these four judicial mortgages, intended to place them upon a distinct and different footing from the others. But the appellant's counsel insists, that the notarial act must be controlled by the general and posterior stipulation in the *sous seing privé* act providing for the removal of mortgages of every description. Without some more positive evidence of the real intent and understanding of the parties, we cannot give to this stipulation the meaning and effect contended for. We think that it contemplated the other mortgages stated in the judge's certificate, in contradistinction to those described in the private act, as to be paid out of the purchase money; we cannot give it the effect of destroying a positive and special agreement in relation to these mortgages, when nothing in it shows that the parties had changed their views as to their validity; or that the purchasers intended to withdraw their

EASTERN DIST.  original consent to take the property subject to those liens,
January, 1840.  pay the price, and resort to their personal action against the

CALDWELL ET AL.  vendors for any sums they might afterwards have to pay on
vs.
ATCHAFALAYA  account of them.
BANK.
     Upon the whole, if there are any doubts as to the true
meaning and effect of the *sous seing privé* act, in reference
to the notarial act, we think that an innocent and *bona fide*
holder should have the benefit of these doubts, whether they
proceed from the insufficiency of the evidence adduced, or
from any ambiguity in the wording of the instrument; for,
in both cases, it rested with the defendant to remove all
doubts or uncertainty on the subject.

     It is, therefore, ordered, adjudged and decreed, that the
judgment of the District Court be affirmed, with costs.